Dale H. Boam (10384)
LAW OFFICES OF DALE H BOAM PC
Tracy Scott Cowdell (09290)
Richard F. Armknecht III (A5910)
ARMKNECHT & COWDELL, P.C.
32 East Main Street
Sandy, Utah 84070
Telephone:    (801) 815-2547
Fax No.:      (801) 566-7965
e-mail:       dboam@comcast.net

Attorneys for the Plaintiffs

FILED
U.S. DISTRICT COURT

2006 MAY -8  A 9: 12

DISTRICT OF UTAH

BY:_____
    DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| GARY CHRISTENSEN, an individual; BRANDON DOPF, an individual; KELLI FLETCHER, an individual; JOHN GALLI, an individual; CHRISTINA HAMILTON, an individual; ELLEN O' HARA, an individual ; BRENT PATTERSON, an individual; CALLISTA POWELL, an individual; JONATHAN ROBERTS, an individual; JAMES B. SMITH, an individual; EMMALEE SPARROW, an individual; and, JON HELGESEN, an individual, for themselves and representing other who are similarly situated, Plaintiffs, | **COMPLAINT AND JURY DEMAND**<br><br>Judge J. Thomas Greene<br>DECK TYPE: Civil<br>DATE STAMP: 05/08/2006 @ 09:11:53<br>CASE NUMBER: 1:06CV00057  JTG |
| vs. | |
| UTAH STATE UNIVERSITY, a State university located in northern Utah; UTAH STATE BOARD OF REGENTS, a State agency responsible for governance of higher education, Defendants. | |

COME NOW, Plaintiffs GARY CHRISTENSEN, an individual who is Deaf;

BRANDON DOPF, an individual who is Deaf; KELLI FLETCHER, an individual who is

Deaf; JOHN GALLI, an individual who is Deaf; CHRISTINA HAMILTON, an

individual who is Deaf; ELLEN O' HARA, an individual who is Deaf; BRENT

PATTERSON, an individual who is Deaf; CALLISTA POWELL, an individual who is Deaf; JONATHAN ROBERTS, an individual who is Deaf; JAMES B. SMITH, an individual who is Deaf; EMMALEE SPARROW, an individual who is Deaf; and, JON HELGESEN, and individual who is Deaf, for themselves and representing others who are similarly situated, by and through their attorneys, ARMKNECHT & COWDELL, P.C., and for their claims for relief against Defendants, UTAH STATE UNIVERSITY, and UTAH STATE BOARD OF REGENTS, allege as follows:

## **PRELIMINARY STATEMENT**

1.     Each named Plaintiff is a student who is Deaf and who uses American Sign Language as his or her principal means of communication. These students also represent former, current, and potential students of USU who are Deaf and who are similarly situated. Each Plaintiff has experienced, is currently experiencing, and will continue experience injury, inequity, and denial of access to education and other programs and services offered by USU as a direct and proximate result of Defendants' failure or refusal to: (1) provide the appropriate auxiliary aids and services necessary to establish effective communication; and/or, (2) give primary consideration to the auxiliary aids and services requested by the Plaintiffs, as is required under federal law and regulations; and (3) establish a comprehensive plan for coming into compliance with the requirements of federal law including but not limited to written policies to guide the Defendants' administrative actions and guide them toward full compliance.

2.     The ADA is a legislative response to the fact that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some

2

improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

3.      Section 504 requires entities who accept federal funds for act in a manner that is equitable and non-discriminatory.

4.      The policies, practices, and procedures of the Defendants generally, as well as Defendants manner of administering their programs, violate the rights of the Plaintiffs' and the rights of members of the proposed class, under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and §504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a) ("Section 504").

## JURISDICTION AND VENUE

5.      This action arises under the laws of the United States, including Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a ("Section 504"). This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(3); 29 U.S.C. § 794a, and 42 U.S.C. §§ 2000d *et seq.*, 12133.

6.      Venue of this action is appropriate in the United States District Court for the District of Utah, Northern Division, pursuant to 28 U.S.C. § 1391(b) as the claim arose in such district.

## THE PARTIES

7.      Plaintiff, GARY CHRISTENSEN, is a natural person who resides in Provo, Utah. He is a person who is Deaf and his primary means of communication is American Sign Language.

8. Plaintiff, BRANDON DOPF, is a natural person who resides in Logan, Utah. He is a person who is Deaf and his primary means of communication is American Sign Language.

9. Plaintiff, KELLI FLETCHER, is a natural person who resides in Logan, Utah. She is a person who is Deaf and her primary means of communication is American Sign Language.

10. Plaintiff, JOHN GALLI, is a natural person who resides in Logan, Utah. John is a person who is Deaf and his primary means of communication is American Sign Language.

11. Plaintiff, CHRISTINA HAMILTON, is a natural person who resides in Salt Lake City, Utah. Christina is a person who is Deaf and her primary means of communication is American Sign Language.

12. Plaintiff, ELLEN O' HARA, is a natural person who resides in Logan, Utah. Ellen is a person who is Deaf and her primary means of communication is American Sign Language.

13. Plaintiff, BRENT PATTERSON, is a natural person who resides in Bountiful, Utah. Brent is a person who is Deaf and his primary means of communication is American Sign Language.

14. Plaintiff, CALLISTA POWELL, is a natural person who resides in Logan, Utah. Callista is a person who is Deaf and her primary means of communication is American Sign Language.

15.     Plaintiff, JONATHAN ROBERTS, is a natural person who resides in Sandy, Utah.  Jon is a person who is Deaf and his primary means of communication is American Sign Language.

16.     Plaintiff, JAMES B. SMITH, is a natural person who resides in Logan, Utah.  James is a person who is Deaf and his primary means of communication is American Sign Language.

17.     Plaintiff, EMMALEE SPARROW, is a natural person who currently resides in Colorado.  Emmalee is a person who is Deaf and her primary means of communication are spoken English and American Sign Language.

18.     Plaintiff, JON HELGESEN, is a natural person who resides in Logan, Utah.  Jon is a person who is Deaf and his primary means of communication is American Sign Language.

19.     Plaintiffs also represent current, former, and potential students who are similarly situated.

20.     Defendant, UTAH STATE UNIVERSITY ("USU") is a state institution of higher education located in Cache County, Utah.  USU is a "public entity" for purposes of 42 U.S.C. § 12132 and the implementing regulations, 28 C.F.R. § 35.104.  USU has traditionally had, and continues to have a large contingent of students who are Deaf among its student body and long history and connection with the Deaf community.  On information and belief, Defendant USU accepts federal funds to support of one or more of its services or programs.

21.     Defendant, UTAH BOARD OF REGENTS (" BOARD") is a Utah Service District. The Board oversees the establishment of policies and procedures,

executive appointments, master planning, budget and finance, proposals for legislation, develops governmental relationships, and performs administrative unit and program approval for higher education for the State of Utah. The BOARD is a "public entity" for purposes of 42 U.S.C. § 12132 and the implementing regulations, 28 C.F.R. § 35.104. On information and belief, Defendant BOARD accepts federal funds to support of one or more of its services or programs.

## CLASS ACTION ALLEGATIONS

22.     Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), Plaintiffs Gary Christensen, Brandon Dopf, Kelli Fletcher, John Galli, Christina Hamilton, Ellen O' Hara, Brent Patterson, Callista Powell, Jonathan Roberts, James B. Smith, Emmalee Sparrow, and Jon Helgesen, bring this action on behalf of themselves and all other persons similarly situated. The plaintiff class consists of all students who are Deaf and who: (1) have attended USU and suffered injury because of Defendants' failure to provide appropriate auxiliary aids and services at any time since 2002; (2) currently attend USU and suffer injury at this time because of Defendants' failure to provide appropriate auxiliary aids and services; and, (3) will potentially attend USU and will suffer injury because of Defendants' failure to provide appropriate auxiliary aids and services.

23.     The exact size of the class is unknown to Plaintiffs, but the number is well over 100 and thus the class membership is believed to be so large that individual joinder of all members would be impracticable.

24.     The questions of law and fact common to the class include whether Defendants violated and continue to violate the ADA, and Section 504 by: (1) denying

the Plaintiffs' and class members the benefits of the Defendants' programs or services and activities because they are Deaf, (2) denying Plaintiffs and class members equal access to educational opportunities solely by reason of their disabilities, (3) denying Plaintiffs and class members reasonable and effective communication through the use of appropriate auxiliary aids and services, (4) failing or refusing to provide accommodations in a timely manner and removing accommodations without warning, engaging in a dialogue, or securing comparable accommodations; (5) utilizing criteria and methods of administration that discriminate against Plaintiffs and class members and defeat or substantially impair the accomplishment of the objectives of higher education; (6) utilizing policies, practices and procedures are facially discriminatory and tend to screen out students who are Deaf including the Plaintiffs and class members; and (7) failing or refusing to provide services in the most integrated setting.

25.     The claims of the named Plaintiffs are typical of the class members' claims.

26.     The named Plaintiffs will fairly and adequately protect the interests of the class. They have no conflict of interest with other class members. Plaintiffs' counsel has experience with class action suits, including actions to enforce the civil rights of persons with disabilities.

27.     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate class-wide injunctive and declaratory relief.

## FACTS

A.     Plaintiffs' Need for Appropriate Aids and Services

Gary Christensen

28.     Gary Christensen is a person who is Deaf and who uses American Sign Language as his primary means of communication. Gary is a senior and has attended USU since his freshman year. In Fall of 2005, Gary was forced to transfer to Brigham Young University, because USU failed or refused to provide the appropriate auxiliary aids and services to allow him to continue attending classes at USU and/or to access his education in equity with students who are not Deaf. Gary would like to return and finish is degree at USU, but he cannot do so unless and until Defendants provide appropriate aids and services.

29.     During his time attending USU Gary has been forced to accept unqualified or under-qualified interpreters if he wanted interpreters for such courses as music theory and political science; classes involving specialized knowledge and technical vocabulary requiring professional interpreting skills in order to provide effective communication. On one or more occasions Gary has been forced to endure other inappropriate aids and services, or no interpreter or auxiliary aids and services for his courses.

30.     Any time Gary complained to the Disability Resource Center ("DRC") about USU's inappropriate and/or inadequate services Diane Baum Director of the DRC, or another administrator, told him that there was a shortage of qualified interpreters in Logan and that USU was doing all it could afford to do.

31.     When Gary asked Diane Baum, why the Defendants had no plan to resolve the lack of services and why they did not just bring qualified interpreters up from Salt Lake City or Ogden, she told him that the Defendants were unable to locate interpreters willing to make the trip.

32. Gary eventually became so frustrated that he requested permission to find his own interpreter and have the Defendants reimburse him for the cost. The administrators at the DRC told him that if he could find such an interpreter USU would pay the costs of the interpreter directly. Gary found such an interpreter. However, the DRC then refused to pay the interpreter directly because she charged $15.00 per hour more than USU's accepted rate. The DRC suggested that, instead of a qualified interpreter, Gary should find a tutor.

33. Gary has been routinely denied access to appropriate auxiliary aids and services. Gary has routinely faced segregation and the inability to engage in classroom discussion as well as other discrimination, because he is a person who is Deaf.

34. Gary has suffered humiliation, frustration, loss of opportunity, and negative academic progress as a direct and proximate result of Defendants discriminatory acts or omissions.

Brandon Dopf

35. Brandon is a 23-year-old man who is Deaf and who uses American Sign Language as his primary means of communication. Brandon is majoring in business information systems.

36. Spring of 2005, Brandon suffered through almost half of the semester with no auxiliary aids or services for his calculus class. When Brandon complained to the DRC that he had no services, instead of securing such aids and services USU administrators simply suggested that he take the class at another time. Brandon would have been required to change his schedule because he is Deaf. However, Brandon did not have the option of taking the class at another time because his acceptance to the USU

9

College of business depended on his completing the calculus class that semester and with a passing grade.

37.     When Defendant USU finally provided services to Brandon it was the middle of the semester. The "interpreter" Defendant USU provided was actually a USU student who was acting as an interpreter, and lacked the skills, experience, and requisite vocabulary necessary to provide Brandon with effective communication. The only benefit the interpreter provided was letting Brandon know when the teacher announced a quiz.

38.     Brandon has been required on one or more occasion to change his schedule to fit the needs of the students hired by Defendant USU to act as interpreters. The constant schedule changes for the hope of getting services finally frustrated Brandon to the point that he revised his agreement with vocational rehabilitation in order to take courses in the summer hoping it would be easier to get even the most basic services.

39.     Defendant USU consistently provided Brandon with substandard note taking services. On one or more occasions the notes Brandon needed to prepare for a test were not given him until long after the test had occurred. The quality of the notes is often so bad that they are useless to use for review. Brandon found that it is often more beneficial to him in the balance to miss chunks of the lecture by looking down in order for him to take his own notes than it is to depend on the note takers offered by the Defendants. Brandon's notes are usually still more complete than those provided through the Defendants. Brandon has made several formal and informal complaints regarding the poor quality of note takers but the Defendant has failed or refused to remedy the problem.

Furthermore, the web server where the archived class notes are made available to students who are Deaf is regularly down.

40.     Brandon wants the right access educational opportunities in a manner equal to the hearing students in his classes. Brandon wants to be able to register for a class at a time that fits his schedule and not the whims of hearing students. Brandon simply wants his right to participate in a discussion, raise his hand, read his notes and asks questions like any other student.

Kelli Fletcher

41.     Kelli is a 25-year-old senior who is Deaf. Kelli uses American Sign Language as her primary means of communication. Kelli is majoring in Family, Consumer, and Human Development (FCHD) with an emphasis in Family Finance.

42.     Kelli has been requesting that Defendants provide her with appropriate services since her sophomore year. In 2004, Kelli became so frustrated with the lack of appropriate services that she wrote a letter to Kermit Hall, President of USU at that time, and demanded that he either find a remedy the lack of services or refund a portion of the tuition to students who are Deaf to compensate them for the substandard services the Defendants offer.

43.     President Hall responded to Kelli with a letter dated September 17, 2004. In his response to Kelli, President Hall acknowledged that he was fully aware of the problems faced by the Deaf students, and he had been aware for two or more years. Furthermore, President Hall claimed that for at least two years prior to his response to Kelli he and been attempting to educate the BOARD on the problem.

44.     Although President Hall claimed to be fully aware of the issues and had be aware for two or more years, he failed to indicate how Defendant USU planned to the address Kelli's immediate educational and communication needs, or the needs of the Plaintiffs, or the needs of other members of the class. In fact, instead of even considering the rebate in tuition for students who are Deaf who are being provided limited educational opportunities, President Hall proposed an increase in tuition.

45.     President Hall did say that he planned on requesting that the BOARD support a program to increase the number of interpreters in the state generally, but he never explained how such a program would resolve the immediate needs of Kelli or the Plaintiffs or the other class members.

46.     On information and belief the BOARD rejected President Hall's proposal.

47.     Currently, Kelli is often required to change her schedule and to compete with other Plaintiffs if she wishes to have an interpreter for her courses. On one or more occasion she has been required to choose between taking a course with inappropriate or no services, or taking the course through the extension program (with the increased possibility, but no guarantee that she will be provided appropriate services) or independent study. Both the extension program and independent study require Kelli to take courses in a manner that segregates her from her peers, including hearing students pursuing the same major. Furthermore, both the extension program and independent study require Kelli to pay extra for courses when compared to day classes. This amounts to a surcharge for being Deaf.

48.     Recently Kelli has also been struggling with the Defendants substandard note taking services. Notes are generally incomplete and often useless. With

substandard interpreting services and note taking services, Kelli feels that she is locked out of the educational opportunities offered to her hearing peers.

49.　　Kelli simply wants access to educational opportunities in a manner equal to that offered the hearing students in her classes. Kelli simply wants the right to participate in a classroom discussion, raise her hand and ask a question and have access to her education like any other student.

John Galli

50.　　John is a 23-year-old senior majoring in Social Work with minor English. John is Deaf and uses American Sign Language as his primary means of communication. Most of John's classes require group participation and discussion.

51.　　On several occasions John has discussed with the DRC that the nature of classes in his major requires participation in classroom discussions. The only effective means to accommodate participation in such classroom discussions is qualified interpreters. Defendant USU routinely assures John that it will provide qualified interpreters and then, without notice to John or any dialogue or discussion, the DRC assigns John aids and services, such as real time captioning, which are not equivalent and not effective.

52.　　John's voice is difficult to understand and he needs an interpreter to voice his comments in class. Typists cannot effectively voice John's comments. Even if a real-time typist can keep up with the classroom discussion, when using a typist John must type his comments (no matter how brief or involved) and then the typist reads them. This impacts communication in two ways: either the class stops cold while all the students wait for John to type his comments and the typist to read his comment or John types his

comments while the class discussion continues and so he misses all the discussion while he types. In either case the typist is usually far enough behind the discussion that the class has moved on before John can type his question, comment or make a point. John not only misses significant information, but he also is made to appear foolish each time this occurs. The use of a real-time typist or transcriber subjects John to ridicule because the natural limitations of the aid give a false since to the members of his class and the instructor that John cannot keep up with the discussion intellectually. To avoid this embarrassment John is often forced to withhold comment. John becomes at best an observer, unable to comment or ask questions. The lack of appropriate aids and services denies him the ability to participate in classroom discussions.

53. John has brought these issues to the attention of Defendant USU on several occasions. Each time the administrators assure him that he will be provided with appropriate accommodations; time and again he is not.

54. John wants access to educational opportunities in a manner equal to the hearing students in his classes. John simply wants his right to participate in a discussion, raise his hand and ask a question like any other student.

Christina Hamilton

55. Christina is a 21-year-old woman who is Deaf and who uses American Sign Language as her primary means of communication.

56. Christina is a junior majoring in Theatre Education. However, because the Defendants have failed or refused to support or provide the use of qualified interpreters,

Christina is forced to sit on the outside and wait, while her hearing classmates have moved ahead in their educational goals.

57.     During Christina's sophomore year she took an acting class; a class required for her major. The class was two hours long and the DRC informed Christina that there were no services available. Christina was forced to attend this class without the opportunity to participate or understand the class. After a few weeks Defendant USU found an interpreter, however that interpreter could only come for the first hour of the class, and so Christina was still left to without the ability to understand or participate in half of the class. Christina is afraid to take any more class from Theatre department. Christina has no way of knowing if she will receive appropriate aids or services for classes required for her major.

58.     In order to get access to the limited services supported or offered by the Defendants, Christina must take fewer classes than the hearing students pursuing the same major. Because the Defendant USU tends to remove services without warning, or provide different services than agreed, Christina must drop classes or change her schedule each time she finds herself without appropriate services. Christina is now behind in her major and will not graduate in four years with her classmate cohort.

59.     Recently Christina took an Astronomy class. Christina gave the DRC her schedule well before the start of classes. Defendant USU told Christina that if she dropped some classes and changed her schedule that she would have an interpreter for the Astronomy class. However, on the first day of class she found out that the DRC did not provide any interpreter. Christina was very upset. Christina found herself with only 13 credits after changing and dropping classes to get a schedule that the DRC said would

assure her appropriate services, and she was still left without such services. Christina felt that she had no choice but to continue with the Astronomy class. After getting a bad grade in on her first test, Christina insisted that Defendant USU give her some kind of services.

60.     Defendant USU's proposed solution was for Christina to take a voice recorder into the class and record everything then take it to the DRC and have a transcript made. This service was not equivalent to and interpreter because Christina was then required to sit in a class without understanding anything during the lecture and the voice recorder did not always get every word on, so there were often blanks in the transcript. Christina got a much lower grade in the class than she would have with appropriate services, and worse she knows she would have LEARNED more if she had only had appropriate aids and services.

Ellen O' Hara

61.     Ellen is a 20-year-old woman who is Deaf and who uses American Sign Language as her primary means of communication. Ellen has a double major  in Elementary Education and Deaf Education.  Ellen attended Brigham Young University as a freshman but then transferred to USU, as BYU does not offer a degree in Deaf Education.

62.     Since transferring to USU, Ellen has become increasingly frustrated with the lack of appropriate aids and services the Defendants have supported and/or provide to USU students who are Deaf.  As her Ellen's level of frustration has been rising dramatically courses have become more complex.

63.     Ellen's frustration is exacerbated by the lack the skills exhibited by most of the interpreters supported and provided by the Defendants. The interpreters fail to interpret large qualities of the classroom lecture. The unqualified interpreters do not have the appropriate experience or vocabulary to function as interpreters an in an undergraduate classroom. Ellen feels that the interpreters tend to spend more time learning how to interpret than facilitating communication so Ellen must spend twice as much time out class to learn what she missed. Ellen must seek out information that the hearing students had access to in class.

64.     Ellen recently been provided with temporary interpreters through an outside agency. This is a great relief... when the interpreter is there. The professional interpreters are moved from class to class without notice to the students and Ellen can never be sure if she will get appropriate services on any given day.

65.     Ellen wants nothing more than to have access to her education in a manner which is equitable with USU students who are not Deaf.

Brent Patterson

66.     Brent is a 22-year-old person who is Deaf and who uses American Sign Language as his primary means of communication. Brent was a student at USU until August of 2005 when he was forced to withdraw and transfer to Weber State University because Defendant USU failed or refused to provide him with appropriate auxiliary aids and services

67.     While attending USU Brent took Theatre, Calculus 1, two computer classes, and English. Brent knew that the English class was discussion-oriented so he

made sure that Defendant USU knew he needed qualified interpreters. The DRC told Brent that he *might* get an interpreter for his discussion based English class and *possibly* a transcriber for his theatre class, but he would not be provided with interpreters or other services for his other courses. In the end he was not provided any services when classes started.

68.     Due to the lack of interpreters Brent felt he could not understand, could not participate, and generally couldn't do much anything in class. Brent was frustrated, but made a conscience decision to stick it out. However, Brent's frustration grew as he sat in class without understanding the material, until he could do nothing more than retreat to his bathroom and cry. He talked with other Deaf students and found that they all shared this common problem. Brent made a decision. Because, he could not get appropriate services at USU he would have to seek them elsewhere.

69.     Brent knew that there was no chance of completing his education at USU and so he applied to Weber State University. After he was accepted at WSU, Brent requested a complete withdrawal from his courses at USU. USU granted Brent a complete withdrawal, and in a letter dated August 31, 2005, USU Matriculation Advisor Krystin M. Deschamps stated that the Brent was being granted a complete withdrawal because "USU lacks the appropriate number of interpreters to assist [its Deaf] students..."

70.     Brent wanted to attend USU; it had been his plan for years. However, without appropriate aids and services Brent realized that his continued attendance at USU would be pointless. Brent simply wanted to get his education in a manner which is

equitable to the educational opportunities afforded his hearing counterparts. The Defendants failed or refused to afford him that right.

Callista Powell

71.     Callista is a 24-year-old woman who is Deaf and who uses American Sign Language as her primary means of communication. Callista is attending her senior year at USU with a double major in Elementary Education and Deaf Education.

72.     Callista is near graduation, but is currently taking several courses for which the Defendants are not providing an interpreter. Callista is struggling to graduate by May of 2006, and it is her goal to continue on to Graduate School.

73.     Due to the Defendants failure or refusal to support and/or provide appropriate aids and services Callista must expend a monumentally greater effort to access the information in her courses than is required of her hearing counterparts. On an almost daily basis Callista misunderstands the instructions in her courses and must seek the same information outside class that her hearing counterparts had access to in class. The extra burden of seeking clarification negatively impacts her ability to perform to her potential.

74.     Callista is forced to withdraw from courses, including courses required for her majors because it is impossible to continue without appropriate aids or services. Callista is required to postpone registering for courses, including courses required for her majors, because the Defendants fail or refuse to support and/or provide appropriate aids and services at the times when her peers (those persons pursuing the same major) are taking the courses. This has subjects Callista to isolation and segregation from her peers because she is Deaf.

75. When USU has provided Callista with interpreters they are often uncertified, unqualified, and lack the skills, abilities, specialized vocabulary, and experience to provide effective communication in a university setting.

76. Callista is currently at as risk of missing her goal of graduating and being subjected to the lost time, money, and opportunity which would follow. Callista has the skills and abilities to succeed in a university classroom, but has not been afforded opportunities equal to those offered her hearing peers.

Jonathan Roberts

77. Jon is a 24 year old man who is Deaf. Until recently Jon attended USU majoring in Business Information Systems. However, the Defendants' failure or refusal to support and/or provide appropriate auxiliary aids and services forced Jon to withdraw from school until such a time as this issue is resolved. Jon wishes to return to USU and to finish his degree as soon as possible.

78. Jon had interpreters assigned to his classes and then "pulled" after the beginning of the term. Often these interpreters were not replaced with any comparable service. Sometimes the interpreter was replaced with a note taker, which was often an in appropriate choice for the style (discussion based) method of instruction.

79. Jon wants to attend USU; he moved to Utah from out of state for that express purpose. However, without appropriate aids and services Jon simply cannot get his education in a manner which is equitable to the educational opportunities afforded his hearing counterparts.

80.     Jon is and has been at all times, ready willing and able to complete his education at USU. However, the Defendants actions, or failures to act, have forced Jon to place his education, goals and dreams on hold until such a time that the Defendants provide the services he needs to access his education in a manner that is equitable with hearing students at USU. Jon's only other choice is to seek his education at another institution that will provide such services; a choice not required of USU's hearing students.

James B. Smith

81.     James is a freshman who is Deaf and who uses American Sign Language as his primary means of communication. Since coming to USU James has been left to a great extent without appropriate services.

82.     Defendant USU told James that he would have no interpreter, or any other aid, for his computer class; he was very upset. As the semester progressed James felt more and more lost. James complained to the DRC on an almost daily basis and he was ready to drop his computer class when the DRC told him that it would be able to provide interpreters for all his classes. James was thrilled, until he found out that the Defendants had not hired more interpreters, they had simply pulled the interpreters from the classes of other Plaintiffs. James was suddenly in the position of getting services at the expense of his friends and classmates.

83.     Since this incident James has often been required to change his schedule to fit the wants of the students USU pays to act as interpreters. James knows that he must compete with the other Plaintiffs if he wishes to have an interpreter for his courses. On one or more occasion James was required to choose between taking a course with

inappropriate or no services, or taking the course through USU's extension program (with the increased possibility, but no guarantee that he will be provided appropriate services) or through independent study. Both the extension program and independent study require James to take courses in a manner that segregates him from his peers, including other students pursuing the same major. Furthermore, both the extension program and independent study require James to pay extra for courses when compared to the cost of taking day classes. This amounts to a surcharge to James for being Deaf.

84.     James wants nothing more than to take his classes with services and aids he requires to allow him to access his education in equity with his non-Deaf classmates. James wants to finish his education where he started. If things continue without the Defendants coming into compliance James may be forced to seek his education elsewhere as other students have been forced to do. He would have to lose time, uproot his family, and disrupt his life in a manner not required of hearing students, because he is Deaf.

Emmalee Sparrow

85.     Emmalee is a 25 year-old woman who is deaf. Emmalee has a double major in Physical Education and Health. Emmalee hopes to graduate in May of 2006.

86.     Emmalee has used interpreters for many of her classes but feels that she could use Real-time Transcription for many, except for classes requiring group discussion. This has been an on-going issue, particularly in her upper-level courses.

87.     On one or more occasion Emmalee has complained to the Defendant USU about her frustrations with assigning Real-time typist to courses requiring discussion, because the "typist" cannot keep up with an on-going multi-party discussion. Emmalee

loses out on opportunities to comment and to ask questions because she is often unable to determine which student is speaking at any given time.

88.     Emmalee has felt frustrated by the inconsistent services and Defendant USU failure or refusal to give primary consideration to her choice of accommodations. Emmalee feels that this has negatively impacted her education and subjected her to frustrations, injuries and requirements which USU students who are hearing are not subject.

Jon Helgesen

89.     Jon is a 22-year-old student who is Deaf and who uses American Sign Language as his primary means of communication. Jon has not declared his major but he is considering psychology (a desperate need within the Deaf community).

90.     Fall of 2005 was Jon's first semester. Jon found out that the Defendants failed or refused to support and/or provide interpreters in two or three classes for which he registered, unless Jon changed his class schedule. So, Jon changed his schedule. On the last day for class changes the DRC sent Jon an email saying that he would not have interpreters for his math and sociology classes. Jon went to register's office to change classes again. Defendant USU told him that he needed to get signatures from his teachers within 10 minutes or he would be too late to change his schedule. After enlisting the help of James B. Smith, Jon was able to get the signatures, just in time. However, two days later the DRC sent Jon another e-mail informing him that even with the change in schedule he would still not be provided with interpreters.

91.     Defendant USU told Jon that he could have a transcriber for his English class. Jon was expected to learn the principles of English (his second language) by

reading it in English (his second language) and without any effective means of asking questions or requesting clarification. Jon was so frustrated that after two classes he dropped the course.

92.     Jon's Sociology course was just as frustrating because Defendant USU assigned him transcriber as his access to communication. Jon struggled, again without an effective means to ask questions or get clarification. Jon was able to convince the professor that he was trying hard but that the transcriber was not an effective accommodation. Jon found a fellow student willing to take the time to explain to him what he was missing.

93.     Jon went through the same process this semester. Defendant USU required Jon to change his schedule, but this time he did get an interpreter, an unqualified interpreter, but an interpreter none the less.

94.     Jon wants nothing more than the education being offered to his classmates. Jon wants to register for a course at the time that works for him and not have to choose his classes based on what is easiest for the Defendants.

B.     Denying the Plaintiffs' the Benefits of Programs, Services and Activities Offered by USU Because They Are Deaf.

95.     Title II of the ADA states: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

96. The named Plaintiffs and persons similarly situated are all qualified persons with disabilities as they and each of them are Deaf and has been accepted as a student at Utah State University or is or may be qualified to attend USU.

97. Defendant USU denies the Plaintiffs and persons similarly situated the benefits of programs, classes, courses, and other services offered by USU by failing or refusing to provide qualified interpreters, note takers and other appropriate auxiliary aids and services.

98. USU's failure or refusal to provide qualified interpreters and note-takers as well as other appropriate auxiliary aids and services denies the Plaintiffs and persons similarly situated access to effective communication, access to class lectures, participation in class discussions, and extracurricular activities.

99. USU failure or refusal to provide qualified, trained and adequate note-taking services subjects the Plaintiffs and those whom they represent to discrimination. The Plaintiffs and those they represent are often provided an interpreter *or* a note-taker. The use of an interpreter necessitates the use of a qualified note-taker, because it is not possible to watch an interpreter and take notes at the same time. Furthermore, a note-taker alone, without a qualified interpreter, leaves gaps in the meaning of the notes rendering them in many cases useless and denies the Plaintiffs and persons similarly situated the benefits of programs, classes, courses, and other services offered by USU.

100. Defendant BOARD knows or should know that the programs and services it governs at USU are not operating in compliance with the ADA and Section 504, but it fails or refuses to require compliance, fund positions or programs to bring USU into compliance and has voted down on or more proposals that would support, allow or

improve access to the benefit of programs services or activities for Plaintiffs and the members of the class.

101.    Defendants' failure or refusal to support and/or provide qualified interpreters, note takers and other appropriate auxiliary aids effectively denies the Plaintiffs and those similarly situated the benefit of asking questions, making comments, and participating in a dialogue with their peers.  Defendants' failure or refusal to support and/or provide qualified interpreters, note takers and other appropriate auxiliary aids in everyway excludes Plaintiffs from accessing the benefits of the programs and services offered by USU, because they are Deaf.

102.    Defendants' failure or refusal to support and/or provide access to qualified interpreters, note takers and other appropriate auxiliary aids subjects the Plaintiffs injury and causes them to suffer irreparable harm in the nature of emotional suffering, frustration, anguish, nervousness, humiliation, indignity, anxiety and physical pain. Plaintiffs also experience limitations of their freedom, and other forms of intangible injuries to their dignity interests.

103.    Defendants' failure or refusal to support and/or provide qualified interpreters, note takers and other appropriate auxiliary aids causes substantial affront and indignity, which injury is ongoing until the underlying practices, policies, and procedures are corrected by a change in policy and practice, injunction, or the source of the affront is removed.

C.    Denying Plaintiffs Equal Access to Educational Opportunities Solely by Reason of Their Disabilities

104. Defendants deny the Plaintiffs and persons within the class access to educational opportunities in a manner equal to students without disabilities. The named Plaintiffs and similarly situated students have been subjected to disparate treatment when compared with USU who are not disabled.

105. USU students who are not Deaf are able to register for and attend any course and at any time for which the student wishes, so long as the student meets the pre-requisites and there are seats available. USU students who are not Deaf can register for courses with confidence that he or she will have equal access to all the opportunities for education, information, and instruction made available by the professor or instructor made available to other students.

106. However, Plaintiffs and persons who are similarly situated are regularly encouraged by USU to register only for limited number of courses for which Defendants are willing to provide or fund auxiliary aids and services. Defendants have failed or refused to act with regard to the Plaintiffs educational needs or wants.

107. If the Plaintiffs or persons who are similarly situated wish to register for a course which falls outside the times which Defendant USU approves for services he or she does so at the risk of being provided inappropriate or inadequate accommodations or no auxiliary aids or services at all.

108. Furthermore, instead of using professional interpreters, Defendant USU historically seeks out USU students to act as interpreters (most of these students are not certified or qualified to provide interpreting services at an undergraduate level). These students/signers are only available to provide their services when not attending their own classes. As most students wish to attend classes during "peak hours" Plaintiffs and

persons who are similarly situated are forced to register for courses at the least desirable times, or evening classes.

109. If courses required for the Plaintiffs' majors are taught only during such "peak hours" or at other times when USU students acting as "interpreters" classes conflict with the Plaintiffs', then the Plaintiffs must choose to either wait and hope for some future time when perhaps the course is being taught at a time when a USU student acting as an interpreter "interpreter" is available, or to take the course with inappropriate aids and services, or with no services at all.

110. Defendant USU will indiscriminately place "real-time" typists with Plaintiffs. A "real-time" typist acts in a similar manner to a court reporter and produces a running transcript of the class. While a "real-time" typist may be an appropriate accommodation for any situation where questions and answers are not anticipated, it is rarely appropriate in an educational setting where discussion or questions are anticipated. A real-time typist fails to provide equal access to educational opportunities for Plaintiffs in discussion based classes or for any Plaintiff or person similarly situated for whom speech is difficult or impossible.

111. Even when Plaintiffs are provided with USU students acting as interpreters they are denied equal access to educational opportunities because the students are unqualified or under qualified as to function as interpreters and tend to omit or misinterpret vast amounts of information. Professors and instructors generally lack the ability to evaluate the quality of the interpretation and regularly but mistakenly assume that the presence of an interpreter means that the Plaintiffs are accessing the lecture in equity with the hearing students. Often the Plaintiffs are not receiving effective

communication because the student acting as interpreter lacks the skills, abilities and/or vocabulary to provide it. The student acting as the interpreter is unqualified and cannot provide the Plaintiffs and persons similarly situated with equal access to educational opportunities, but because there is someone sitting in the interpreter's chair the professor or instructor assumes the Plaintiff is not doing well in the class because he or she is simply not trying or refusing to participate.

112. The use of unqualified or under qualified students as interpreters denies the Plaintiffs equal access to educational opportunities in a manner that is equally or more detrimental than USU providing no services at all.

113. USU refuses of fails to provide qualified, trained and adequate note-taking services. The Plaintiffs and those they represent are often provided an interpreter or a note-taker. The use of an interpreter necessitates the use of a qualified note-taker because it is not possible to watch an interpreter and take notes at the same time. Furthermore, a note-taker alone, without a qualified interpreter leaves gaps in the meaning of the notes rendering them in many cases useless to the student who is Deaf.

114. Defendant BOARD knows or should know that the programs and services it governs at USU are not operating in compliance with the ADA and Section 504, but it fails or refuses to require compliance, fund positions or programs to bring USU into compliance and has voted down on or more proposals that would support, allow or improve access for Plaintiffs and the members of the class to educational opportunities in equity with students who are not Deaf.

115. Defendants support and use of uncertified, unqualified or under qualified USU students as "interpreters" and its failure or refusal to support and/or provide

qualified interpreters, note takers and other appropriate auxiliary aids subjects the

Plaintiffs injury. The Defendants' denying the Plaintiffs' equal access to educational

opportunities causes them to suffer irreparable harm in the nature of emotional suffering,

frustration, anguish, nervousness, humiliation, indignity, and anxiety. Plaintiffs also

experience limitations of their freedom, and other forms of intangible injuries to their

dignity interests.

116.    Defendants' failure or refusal to support and/or provide qualified

interpreters, note takers and other appropriate auxiliary aids causes substantial affront and

indignity, which injury is ongoing until the underlying practices, policies, and procedures

are corrected by a change in policy and practice, injunction, or the source of the affront is

removed.

D.    Denying Effective Communication through Appropriate Auxiliary Aids and
      Services.


117.    In its regulations, the ADA requires public entities to take the steps

necessary to ensure that communications with applicants, participants, and members of

the public with disabilities are as effective as communications with others. 28 C.F.R. §

35.160 (a). Similar requirements are found under Section 504.

118.    The ADA places an affirmative duty on public entities, such as the

Defendants, to assure that persons who are Deaf are provided with the auxiliary aids and

services needed to establish effective communication. 28 C.F.R. § 35.160 (b)(1). In

cases where an auxiliary aid or service is needed to establish effective communication,

primary consideration shall be given to the Deaf person's choice of which auxiliary aid or

service is needed. 28 C.F.R. § 35.160 (b)(2); see also DOJ's Technical Assistance Manual, § II-7.1100.

119. Defendant USU regularly fails or refuses to provide the Plaintiffs and persons who are similarly situated with the effective and appropriate auxiliary aids and services needed to establish effective communication in its classrooms and for other programs and services provided by the Defendant.

120. Defendant USU fails or refuses to give primary consideration to the auxiliary aids or services requested by students who are Deaf, including the Plaintiffs and members of the class.

121. The Plaintiffs have continually requested appropriate auxiliary aids and services, such as qualified interpreters, and Defendant USU has regularly denied such accommodations. Defendant BOARD has consistently failed or refused to require Defendant to comply with the ADA and other federal laws, and/or has failed or refused to support or fund programs to effectuate such compliance.

122. Plaintiffs and persons similarly situated are often required to choose between an interpreter (often an unqualified interpreter) and a note-taker. However, an interpreter and a note taker are not comparable accommodations, but are actually two halves of the same accommodation. Because persons who are Deaf access all information visually, a person who is Deaf in an academic setting the lacks the ability to take notes while attempting to access the information provided by the professor or instructor through an interpreter (a person who is Deaf cannot look down to take notes and still see the interpreter). As effective communication requires both an interpreter and a note taker, one is not an equitable replacement for the other.

123.    Furthermore, Defendants currently and historically rely on interpreters that lack qualification under federal law and/or the appropriate certification under state law to provide interpreting services in a college setting. The "Allowable Practices" established by Utah Interpreter Programs under specify that an interpreter with less than a level two certification lacks the skills, abilities and experience to work in an undergraduate setting and therefore should not be providing interpreting services in an undergraduate setting. An interpreter holding less than the equivalent of a level two certification from the state of Utah cannot be presumed to be qualified under the state law.

124.    The Defendants fail or refuse to give primary consideration to the Plaintiffs' requests for qualified interpreters. Instead of qualified interpreters, Defendants routinely support and/or provide no auxiliary aid or service, or an inappropriate aids or services. Contrary to the express request of the Plaintiffs, Defendant USU will place "real-time" typists with Plaintiffs instead of the qualified interpreters the Plaintiffs request. A "real-time" typist is not an equivalent accommodation to an interpreter because it is not an appropriate accommodation for any situation where questions and answers are anticipated. Therefore it is rarely appropriate in an educational setting where discussion or questions are anticipated. A real-time typist is an inappropriate accommodation in a discussion based class or for any Plaintiff or persons similarly situated for whom speech is difficult or impossible.

125.    Defendants' failure or refusal to support and/or provide qualified interpreters, note takers and other appropriate auxiliary aids subjects the Plaintiffs injury and causes them to suffer irreparable harm in the nature of emotional suffering, frustration, anguish, nervousness, humiliation, indignity, anxiety and physical pain.

Plaintiffs also experience limitations of their freedom, and other forms of intangible injuries to their dignity interests.

126.    Defendants' failure or refusal to support and/or provide qualified interpreters, note takers and other appropriate auxiliary aids causes substantial affront and indignity, which injury is ongoing until the underlying practices, policies, and procedures are corrected by a change in policy and practice, injunction, or the source of the affront is removed.

E.    Failing or Refusing to provide Accommodations in a Timely Manner and Removing Accommodations without Warning, Engaging in a Dialogue, or Securing Comparable Accommodations.

127.    The ADA places an affirmative duty on public entities, such as the Defendants, to assure that persons who are Deaf are provided with the auxiliary aids and services needed to establish effective communication. 28 C.F.R. § 35.160 (b)(1). In cases where an auxiliary aid or service is needed to establish effective communication, primary consideration shall be given to the Deaf person's choice of which auxiliary aid or service is needed. 28 C.F.R. § 35.160 (b)(2); see also DOJ's Technical Assistance Manual, § II-7.1100.

128.    The ADA and Section 504 require the provision of aids or services in a timely manner and further requires entities to maintain features of accessibility once such are in place. The Defendants fail or refuse to support and/or provide appropriate aids and services in a timely manner or maintain adequate accommodations after such are in place.

129.    Furthermore, Defendants have had actual knowledge for 5 to 7 years that the ADA and Section 504 required them to provide appropriate aids and services for

students. On information and belief for at least 5 to 7 years Defendants have been aware that they were failing to comply with the requirements of both the ADA and Section 504. However, in that time frame the Defendants have failed to establish, fund or support any plan or program to remedy their lack of compliance. Defendants have each voted down or in other ways refused one or more proposals designed to promote compliance including but not limited to: proposals to create full time benefited positions in order to attract professional interpreters (in favor of using unqualified or under qualified USU students as interpreters), and funding programs to attract more students to become qualified interpreters.

130.    Since Defendant USU became aware of this action, in a matter of days it secured a small number of professional interpreters on a contract basis; showing that it is possible to secure a number of qualified interpreters in a short amount of time. Furthermore it tends to show that for 5 to 7 years prior to this action Defendants simply failed or refused to provide such services in a timely manner.

131.    On information and belief Defendant USU had the opportunity to contract with at least two more professional interpreters during the same time frame but failed or refused to do so.

132.    Defendant USU has established a policy or practice of removing or transferring interpreters from one Plaintiff to another after the start of the academic session and replacing the interpreter with inappropriate accommodations, such as a note taker, or failing or refusing to replace the accommodation in any manner. Since securing the small number of professional interpreters, Defendant USU is continuing this policy and practice of pulling these interpreters from one Plaintiff's classroom and moving them

to another with little or no warning. The still Plaintiffs have no idea from day to day what services, if any they will receive.

133.    Defendants failure or refusal to support and/or provide qualified interpreters, note takers and other appropriate auxiliary aids in a timely manner subjects the Plaintiffs and the class that they represent injury and causes them to suffer irreparable harm in the nature of emotional suffering, frustration, anguish, nervousness, humiliation, indignity, anxiety and physical pain. Plaintiffs also experience limitations of their freedom, and other forms of intangible injuries to their dignity interests.

134.    Defendant USU's failure or refusal to maintain qualified interpreters, note takers and other appropriate auxiliary aids causes substantial affront and indignity, which injury is ongoing until the underlying practices, policies, and procedures are corrected by a change in policy and practice, injunction, or the source of the affront is removed.

F.    Utilizing Policies, Practices, Procedures and That Have a Disparate Impact or Tend to Screen Out Students Who Are Deaf and Hard of Hearing

135.    The ADA and its regulations require public entities to take the steps necessary to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others. 28 C.F.R. § 35.160 (a).

136.    The Plaintiffs and members of the proposed class are denied access to classes and courses offered generally to students at USU because Defendants employ policies practices and procedures that have a disparate impact or tend to fail or refuse to provide appropriate auxiliary aids or services.

137. Defendant BOARD has consistently failed or refused to require Defendant USU to comply with the ADA and other federal laws, and/or has failed or refused to support or fund programs to effectuate such compliance.

138. In an e-mail dated August 25, 2005, the Defendant USU issued a policy statement which was distributed to students who are Deaf. The e-mail stated that interpreters would be assigned to students based upon their class status and rank, first to graduate students, then second bachelors, seniors, juniors, sophomores and freshman.

139. This policy runs expressly counter to the ADA and Section 504's requirement that accommodations be provided based on an interactive process that evaluates of the need of the individual being accommodated.

140. Diane Baum, DRC Director, was copied on the e-mail and had ample opportunity to disclaim, but failed or refused to do so.

141. This policy also contradicts another USU policy stating that "Interpreters are scheduled according to their credentials, experience, familiarity and fluency in a particular subject area and certification level." See USU's *Policies and Procedures for Services for Deaf and Hard of Hearing Students*.

142. On information and belief the policy of assigning interpreters based on class rank or status has been implemented and Defendants regularly deny or remove interpreters from the classes of freshman and sophomores who are Deaf.

143. USU has a policy and practice in place of generally denying auxiliary aids and services for physical education courses, despite the fact that such courses are a general education requirement.

144. The Defendants' policies, practices and procedures of failing or refusing to support and/or provide appropriate services has forced one or more of the Plaintiffs to transfer to other colleges or universities that offer such services; effectively screening such students out because they are Deaf.

145. One or more Plaintiff was granted a withdrawal by USU matriculation advisors expressly because "USU lacks the appropriate number of qualified interpreters," to meet the needs of the students who are Deaf.[1]

146. Defendant USU appears to have adopted a policy, practice, and procedure of facilitating the transfer of its Deaf students to other colleges or universities rather than remedy its admitted lack of qualified interpreters.

147. Defendants' failure or refusal to support and/or provide qualified interpreters, note takers and other appropriate auxiliary aids subjects the Plaintiffs to injury and causes them to suffer irreparable harm in the nature of emotional suffering, frustration, anguish, nervousness, humiliation, indignity, anxiety and physical pain. Plaintiffs also experience limitations of their freedom, and other forms of intangible injuries to their dignity interests.

148. Defendants' failure or refusal to support and/or provide qualified interpreters, note takers and other appropriate auxiliary aids causes substantial affront and indignity, which injury is ongoing until the underlying practices, policies, and procedures are corrected by a change in policy and practice, injunction, or the source of the affront is removed.

---

[1] See letter dated August 31, 2005 from Krystin M. Deschamps, USU Matriculation Advisor to Weber State University Admissions Office attached as exhibit 1.

G.    Utilizing Criteria or Methods of Administration that have the Effect of
      Discriminating against the Plaintiffs and Defeat or Substantially Impair the
      Accomplishment of the Objectives of Higher Education.

149.    The ADA's implementing regulations further provide that "[a] public
entity may not, directly or through contractual or other arrangements, utilize criteria or
methods of administration: (i) that have the effect of subjecting qualified individuals with
disabilities to discrimination on the basis of disability; [or] (ii) that have the purpose or
effect of defeating or substantially impairing accomplishment of the objectives of the
public entity's program with respect to individuals with disabilities." 28 C.F.R. §
35.130(b)(3); *see also* 28 C.F.R. § 41.51(b)(3) (imposing the same requirement on the
administration of federally assisted programs under Section 504).

150.    The named Plaintiffs and members of the class are qualified persons with
disabilities and have been subject to discrimination because they are Deaf and by reason
of the Defendants utilizing criteria and methods of administration that have the effect of
discriminating against the Plaintiffs because of their disabilities.

151.    Defendants have had actual knowledge of the requirements placed upon
colleges and universities under the ADA and Section 504 to provide effective
communication to students who are Deaf through the use of appropriate aids and services
but have employed methods of administration that kept the Defendants from coming into
compliance

152.    On information and belief, in the Fall of 1999, USU students who are Deaf
staged a march to protest USU's lack of appropriate interpreting services.  On
information and belief representatives of the Deaf students met with USU administrators
including George H. Emert, USU's president at the time.  On information and belief the

students clearly stated that USU needed to address the lack of qualified interpreters and were assured that action would be taken to resolve their complaints.

153. On information and belief, since 1999 many USU students who are Deaf have individually and collectively filed similar complaints with Defendants.

154. In a letter dated September 17, 2004, Kermit Hall, USU's president at the time, wrote a letter in response to a complaint filed by Plaintiff Kelli Fletcher. In his letter President Hall states that he is aware that USU lacks of appropriate services for its students who are Deaf and has been aware of the issue for two or more years. Furthermore, President Hall's letter states that for at least two years he has been educating the BOARD on the parameters of the problem. Finally, President Hall's letter state that USU is unable to attract qualified interpreters with the minimal resources it devotes to the problem, and he proposes a scholarship program to train more students to become interpreters (but does not explain how such scholarship will help USU attract more qualified interpreters or address it current failure to comply).

155. On information and belief, the BOARD failed or refused to fund and/or to support this and other proposals to provide more interpreters generally and to bring Defendant USU into compliance specifically. The BOARD has acted in a manner inconsistent with the goals of compliance with the ADA, Section 504 and the goals of higher education.

156. In a document dated July 2, 2004, entitled "Proposal for Sign Language Interpreter Loans," Defendant USU's DRC director Diane Baum implies that Defendant USU is out of compliance with the ADA and Section 504; she states that failure to meet the requirements of equal access under the ADA and Section 504 could lead to a costly

federal complaint. Finally, Ms. Baum states that failure to meet the requirements of federal laws is detrimental to the education of students who are Deaf.

157. For five to seven years Defendants have had actual knowledge that they were failing or refusing to support and/or provide appropriate auxiliary aids and services to the Plaintiffs and other members of the class. However, Defendants employed criteria and methods of administration that have the effect of discriminating against students who are Deaf, including but not limited to: refusing or failing to fund one or more proposals to establish full time benefited interpreting positions at USU and instead using unqualified or under qualified USU students as interpreters; refusing or failing to fund one or more proposals for scholarships to train more interpreters in Utah; refusing or failing to establish a comprehensive program to seek or recruit interpreters from outside the state or even from outside their local area; and, consistently offering wages and benefits geared toward attracting unqualified or under qualified students to act as interpreters instead of professional interpreters.

158. The Defendants continue to employ criteria and methods of administration which seek the least qualified interpreters. On or about January of 2006 USU began a campaign of advertising locally for interpreters. USU's advertisements offered a $2000.00 bonus to Level I interpreters. Level I interpreters are considered unqualified to interpret in an undergraduate classroom under the State "Allowable Practices" for interpreters, yet USU was actively recruiting such interpreters. Furthermore, the advertisement offered no incentive for Level III, the most qualified interpreters. The Defendants criterion for applicants was focused on attracting the least qualified.

159. Defendants have had five to seven years to devote their time and energy to administering their programs in a manner that would promote compliance with the ADA and Section 504 and provide services in equity, but they have failed or refused to do so.

160. The Defendants failure or refusal to support and/or employ methods of administration that promote compliance and equal access to education for students who are Deaf, as well as the Defendants failure or refusal to correct discriminatory conditions substantially impairs the objectives of higher education.

161. Defendants' failure or refusal to support and/or provide qualified interpreters, note takers and other appropriate auxiliary aids subjects the Plaintiffs to injury and causes them to suffer irreparable harm in the nature of emotional suffering, frustration, anguish, nervousness, humiliation, indignity, anxiety and physical pain. Plaintiffs also experience limitations of their freedom, and other forms of intangible injuries to their dignity interests.

162. Defendants' failure or refusal to support and/or provide qualified interpreters, note takers and other appropriate auxiliary aids causes substantial affront and indignity, which injury is ongoing until the underlying practices, policies, and procedures are corrected by a change in policy and practice, injunction, or the source of the affront is removed.

H. Failing or Refusing to Administer Services, Programs, and Activities in the Most Integrated Setting

163. Defendant USU is required to comply with the "integration mandate" dictated by the ADA, by Section 504, and by federal regulations. These authorities require that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."

28 C.F.R. § 35.130(d); *see also* 28 C.F.R. § 41.51(d) (imposing the same requirement on the administration of federally assisted programs).

164.     The "most integrated setting appropriate" is "a setting that enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible." 28 C.F.R. pt. 35, App. A, p. 450.

165.     The Plaintiffs and persons similarly situated have regularly been told that no accommodation will be provided for classes (including courses required for graduation) for which they attempt to register. Defendant USU regularly gives Plaintiffs and other members of the class the "choice" of attending classes with no accommodation, or taking the course through independent study (and at an added cost to the student who is Deaf) or through USU's extension program at night, with a chance of some interpreting services being provided (and at an added cost to the student who is Deaf).

166.     The Defendants' offer a "choice" that removes and segregates the Plaintiffs and other members of the class, from the general classroom, from their peers and/or other students who are not Deaf who are pursuing the same major.

167.     Plaintiffs are subjected not only to segregation, but to lost opportunities integration affords including but not limited to: socialization with your peers in an educational setting, study groups, tips, and a support system of other students pursuing the same or similar majors.

168.     The Plaintiffs and other members of the class have no real choice but to accept such isolation if they wish to proceed toward graduation.

169. Furthermore, the liberal use of real-time typists in discussion based courses further isolates the Plaintiffs and violates the requirement that services be provided in a manner which is integrated. The student who is Deaf is in physical proximity to non-disabled classmates but is unable to effectively join into discussion, ask questions, make comments and/or function in the standard classroom setting.

170. The Defendants' policies practices and procedures, including Defendant BOARD's failure or refusal to fund or support programs that would promote compliance, effectively segregate students who are Deaf physically, socially and emotionally from his or her instructors and peers in violation of the ADA and Section 504's integration mandate.

171. Defendants' failure or refusal to provide qualified interpreters, note takers and other appropriate auxiliary aids subjects the Plaintiffs to injury and causes them to suffer irreparable harm in the nature of emotional suffering, frustration, anguish, nervousness, humiliation, indignity, anxiety and physical pain. Plaintiffs also experience limitations of their freedom, and other forms of intangible injuries to their dignity interests.

172. Defendants' failure or refusal to provide qualified interpreters, note takers and other appropriate auxiliary aids causes substantial affront and indignity, which injury is ongoing until the underlying practices, policies, and procedures are corrected by a change in policy and practice, injunction, or the source of the affront is removed.

173. Plaintiffs demand a jury trial on all causes of action.

43

## FIRST CAUSE OF ACTION
(Violation of Title II of the ADA: Denying the Plaintiffs and Other Class Members the Benefit of the Defendants Programs, Services or Activities because they are Deaf)

174.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 173 hereof, and incorporates the same herein by reference.

175.    The Plaintiffs are qualified persons with disabilities as defined by the ADA, and are subjected to discrimination by reason of the Defendants denying the Plaintiffs and persons similarly situated the benefits of Defendants programs, services and activities because they are Deaf. 42 U.S.C. §§ 12131-12133.

176.    Defendants deny Plaintiffs and other persons similarly situated the benefits of their programs services and activities by failing or refusing to assure that Plaintiffs and other persons similarly situated are provided with the auxiliary aids and services needed to establish effective communication in courses and other University sponsored activities.  28 C.F.R. § 35.160 (b)(1).

177.    Defendants have failed or refuse to establish a comprehensive plan to provide the benefits of their programs, services and activities by providing appropriate auxiliary aids and services to the Plaintiffs and other persons similarly situated.

178.    Defendants' discriminatory acts or omissions caused and continue to cause Plaintiffs to suffer irreparable harm in the nature of humiliation, limitations of their freedom, loss of opportunities due to negatively impacting their class work and/or postponement or their graduation and other forms of intangible injuries.

179.    Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of Plaintiffs' much-cherished independence.  The

injuries sustained by Plaintiffs, relating to Defendants' discrimination are ongoing until the discriminatory conditions are corrected or by the court issuing an injunction.

180.    Plaintiffs have incurred added costs for their education because they are Deaf including the cost of retaking some classes, hiring tutors, lost employment opportunities, the cost incident to transferring to another college or university and others for which they should be compensated. Furthermore, the Plaintiffs and other members of the class are injured and suffer from severe emotional distress (much more than typical persons could be expected to endure) they are entitled to compensation for such injuries.

181.    Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of attorneys' fees and costs.

### SECOND CAUSE OF ACTION
(Violation of Title II of the ADA: Denying Plaintiffs and Other Class Members Equal Access to Educational Opportunities because they are Deaf)

182.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 181 hereof, and incorporate the same herein by reference.

183.    Defendants are obligated by the ADA to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7).

184.    Defendants failed to establish or modify policies, practices, or procedures for providing the Plaintiffs with access to educational opportunities in a manner equal to educational opportunities provided to persons who are not Deaf.

185.    The acts or omissions of the Defendants (their agents or employees) caused the Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests. Each of the

discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much-cherished independence. The injuries sustained by Plaintiffs relating to the Defendants' discrimination is ongoing until the discriminatory conditions are corrected.

186. Plaintiffs are at risk of further violations because of Defendants' continuing policies and practices of failing or refusing to provide effective communication.

187. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of Plaintiffs' much-cherished independence. The injuries sustained by Plaintiffs relating to Defendants' discrimination are ongoing until the discriminatory conditions are corrected by either granting an injunction or removing or shutting down the source of the affront and indignity.

188. Plaintiffs have incurred added costs for their education because they are Deaf including the cost of retaking some classes, hiring tutors, lost employment opportunities, the cost incident to transferring to another college or university and others for which they should be compensated. Furthermore, the Plaintiffs and other members of the class are injured and suffer from severe emotional distress (much more than typical persons could be expected to endure) they are entitled to compensation for such injuries.

189. Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
(Violation of Title II of the ADA: Denying the Plaintiffs and Other Class Members
Effective Communication Through the Use of Appropriate Auxiliary Aids and Services )

190. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 189 hereof, and incorporate the same herein by reference.

191. The ADA places an affirmative duty on public entities, such as the Defendants, to assure that persons who are Deaf are provided with the auxiliary aids and services needed to establish effective communication. 28 C.F.R. § 35.160 (b)(1).

192. In cases where an auxiliary aid or service is needed to establish effective communication, primary consideration shall be given to the Deaf person's choice of which auxiliary aid or service is needed. 28 C.F.R. § 35.160 (b)(2); see also DOJ's Technical Assistance Manual, § II-7.1100.

193. Defendants have failed or refused to provide appropriate auxiliary aids and services. Furthermore, Defendants have failed or refused to give primary consideration to the Plaintiffs choice of which auxiliary aid or service is needed

194. Defendants have not educated their agents or employees regarding the ADA, nor has it corrected its discriminatory policies and practices in order to comply with the ADA.

195. Plaintiffs, suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests when entities such as Defendants engage in discriminatory acts.

196. Plaintiffs have incurred added costs for their education because they are Deaf including the cost of retaking some classes, hiring tutors, lost employment opportunities, the cost incident to transferring to another college or university and others for which they should be compensated. Furthermore, the Plaintiffs and other members of

the class are injured and suffer from severe emotional distress (much more than typical persons could be expected to endure) they are entitled to compensation for such injuries.

197.    Plaintiff has been forced to engage the services of an attorney. Therefore, they are entitled to an award of attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### (Violation of Title II of the ADA: Removing Accommodations without Warning, Engaging in a Dialogue, or Securing Comparable Accommodations.)

198.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 197 hereof, and incorporate the same herein by reference

199.    Plaintiffs are qualified individuals with disabilities under the ADA and are subjected to discrimination solely because of their disability.

200.    Defendants have a policy and practice of removing auxiliary aids and services from Plaintiffs without warning or dialogue and often fail to replace the aid or service with comparable accommodation.

201.    Defendants have not educated their agents or employees regarding the ADA, nor has it corrected its discriminatory policies and practices in order to comply with the ADA.

202.    The acts or omissions of Defendants (or their agents) caused and continue to cause the Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much-cherished independence. The injuries sustained by Plaintiffs relating to the Defendants' discrimination are ongoing until the discriminatory conditions are corrected.

203. Plaintiffs have incurred added costs for their education because they are Deaf including the cost of retaking some classes, hiring tutors, lost employment opportunities, the cost incident to transferring to another college or university and others for which they should be compensated. Furthermore, the Plaintiffs and other members of the class are injured and suffer from severe emotional distress (much more than typical persons could be expected to endure) they are entitled to compensation for such injuries.

204. The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### (Violations of Title II of the ADA: Utilizing Policies, Practices, Procedures and That Have a Disparate Impact or Tend to Screen Out Students Who Are Deaf and Hard of Hearing)

205. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 204 hereof, and incorporate the same herein by reference

206. Plaintiffs are qualified individuals with disabilities under the ADA and are subjected to discrimination solely because of their disability.

207. Defendants have a policy and practice of removing auxiliary aids and services from Plaintiffs without warning or dialogue and often fail to replace the aid or service with comparable accommodation.

208. Defendants have not educated their agents or employees regarding the ADA, nor has it corrected its discriminatory policies and practices in order to comply with the ADA.

209. The acts or omissions of Defendants (or their agents) caused and continue to cause the Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests. Each of the

discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much-cherished independence. The injuries sustained by Plaintiffs relating to the Defendants' discrimination are ongoing until the discriminatory conditions are corrected.

210. Plaintiffs have incurred added costs for their education because they are Deaf including the cost of retaking some classes, hiring tutors, lost employment opportunities, the cost incident to transferring to another college or university and others for which they should be compensated. Furthermore, the Plaintiffs and other members of the class are injured and suffer from severe emotional distress (much more than typical persons could be expected to endure) they are entitled to compensation for such injuries.

211. The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
(Violations of Title II of the ADA: Utilizing Criteria or Methods of Administration that have the Effect of Discriminating against the Plaintiffs and Defeat or Substantially Impair the Accomplishment of the Objectives of Higher Education.)

212. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 212 hereof, and incorporate the same herein by reference

213. Plaintiffs are qualified individuals with disabilities under the ADA and are subjected to discrimination solely because of their disability.

214. Defendants have a policy and practice of removing auxiliary aids and services from Plaintiffs without warning or dialogue and often fail to replace the aid or service with comparable accommodation.

215. Defendants have not educated their agents or employees regarding the ADA, nor has it corrected its discriminatory policies and practices in order to comply with the ADA.

216. The acts or omissions of Defendants (or their agents) caused and continue to cause the Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much-cherished independence. The injuries sustained by Plaintiffs relating to the Defendants' discrimination are ongoing until the discriminatory conditions are corrected.

217. Plaintiffs have incurred added costs for their education because they are Deaf including the cost of retaking some classes, hiring tutors, lost employment opportunities, the cost incident to transferring to another college or university and others for which they should be compensated. Furthermore, the Plaintiffs and other members of the class are injured and suffer from severe emotional distress (much more than typical persons could be expected to endure) they are entitled to compensation for such injuries.

218. The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
(Violations of Title II of the ADA: Failing or Refusing to Administer Services, Programs, and Activities in the Most Integrated Setting)

219. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 218 hereof, and incorporate the same herein by reference

220. Plaintiffs are qualified individuals with disabilities under the ADA and are subjected to discrimination solely because of their disability.

221. Defendants fail or refuse to administer their services, programs, and activities in the most integrated setting.

222. Defendants have not educated their agents or employees regarding the ADA, nor has it corrected its discriminatory policies and practices in order to comply with the ADA and forward the provision of services in an integrated setting.

223. The acts or omissions of Defendants (or their agents) caused and continue to cause the Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much-cherished independence. The injuries sustained by Plaintiffs relating to the Defendants' discrimination are ongoing until the discriminatory conditions are corrected.

224. Plaintiffs have incurred added costs for their education because they are Deaf including the cost of retaking some classes, hiring tutors, lost employment opportunities, the cost incident to transferring to another college or university and others for which they should be compensated. Furthermore, the Plaintiffs and other members of the class are injured and suffer from severe emotional distress (much more than typical persons could be expected to endure) they are entitled to compensation for such injuries.

225. The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION
(Violations of Section 504)

226.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 227 hereof, and incorporate the same herein by reference

227.    Individual Plaintiffs and the proposed class are qualified individuals with disabilities protected by Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a).

228.    Defendants have violated and continue to violate the mandates of Section 504 and its regulations by: (1) denying the Plaintiffs' the benefits of the Defendants' programs or services and activities because they are Deaf, (2) denying Plaintiffs equal access to educational opportunities solely by reason of their disabilities, (3) denying Plaintiffs reasonable and effective communication through the use of appropriate auxiliary aids and services, (4) failing or refusing to provide accommodations in a timely manner and removing accommodations without warning, engaging in a dialogue, or securing comparable accommodations; (5) utilizing criteria and methods of administration that discriminate against Plaintiffs and defeat or substantially impair the accomplishment of the objectives of higher education, (6) Utilizing policies, practices and procedures are facially discriminatory and tend to screen out students who are Deaf, and (7) failing or refusing to provide services in the most integrated setting.

229.    Defendants have not educated their agents or employees regarding Section 504, nor have they corrected discriminatory policies and practices in order to comply with Section 504 and its regulations.

230.    The acts or omissions of Defendants (or their agents) caused and continue to cause the Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests.  Each of the

discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much-cherished independence. The injuries sustained by Plaintiffs relating to the Defendants' discrimination are ongoing until the discriminatory conditions are corrected.

231. Plaintiffs have incurred added costs for their education because they are Deaf including the cost of retaking some classes, hiring tutors, lost employment opportunities, the cost incident to transferring to another college or university and others for which they should be compensated. Furthermore, the Plaintiffs and other members of the class are injured and suffer from severe emotional distress (much more than typical persons could be expected to endure) they are entitled to compensation for such injuries.

232. The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants as follows;

On the Plaintiffs' First Cause of Action:

a. That this Court exercise jurisdiction over this action.

b. That this Court declares that the actions and failures to act of Defendants, including their agencies, employees, and agents, violated the Americans with Disabilities Act's mandate to provide the Plaintiffs and members of the class situated with the benefits of their programs, services and activities.

c. That this Court issue preliminary and permanent injunctions to enjoin Defendants from continuing to violate Title II of the Americans with

Disabilities Act and to require Defendants to immediately establish written policies to provide the Plaintiffs and members of the class situated with the benefits of their programs, services and activities, at all program at all levels.

      d.     That this Court issue such other relief as may be just, equitable and appropriate, including compensatory damages for the actual and prospective financial losses as well as emotional distress suffered by the Plaintiffs because of the discriminatory actions of the Defendants and a award the Plaintiffs reasonable attorneys' fees, litigation expenses and costs.

On the Plaintiffs' Second Cause of Action:

      a.     That this Court declare that the actions and failures to act of Defendants, its agencies, agents and employees violated Title II of the Americans with Disabilities Act by denying the Plaintiffs and members of the class equity in educational opportunities when compared with students who are not Deaf, solely by reason of their Deafness.

      b.     That this Court issue preliminary and permanent injunctions requiring Defendants to immediately establish written policies outlining their commitment to providing equity in educational opportunities for students who are Deaf, and defining clear steps to accomplishing such equity.

      c.     That this Court issue such other relief as may be just, equitable and appropriate, including compensatory damages for the actual and prospective financial losses as well as emotional distress suffered by the Plaintiffs because of the discriminatory actions of the Defendants and a award the Plaintiffs reasonable attorneys' fees, litigation expenses and costs.

On the Plaintiffs' Third Cause of Action:

     a.     That this Court declare that the actions and failures to act of Defendants, its agencies, agents and employees violated Title II of the Americans with Disabilities Act by denying the Plaintiffs and other members of the class with effective communication through the provision of auxiliary aids and services and failing to give primary consideration to aid or service requested by the Plaintiff or other member of the class.

     b.     That this Court issue preliminary and permanent injunctions to enjoin Defendants, their agents, employees, and assigns from denying the Plaintiffs and other members of the class with effective communication through the provision of auxiliary aids and services and requiring the Defendants to give primary consideration to aid or service requested by the Plaintiff or other member of the class.

     c.     That this Court issue such other relief as may be just, equitable and appropriate, including compensatory damages for the actual and prospective financial losses as well as emotional distress suffered by the Plaintiffs because of the discriminatory actions of the Defendants and a award the Plaintiffs reasonable attorneys' fees, litigation expenses and costs.

On the Plaintiffs' Fourth Cause of Action:

     a.     That this Court declare that the actions and failures to act of Defendants, including their agencies, agents and employees, violated That this Court declare that the actions and failures to act of Defendants, its agencies, agents and employees violated Title II of the Americans with Disabilities Act by

Defendants failing or refusing to provide accommodations in a timely manner and removing accommodations without warning, engaging in a dialogue with the Plaintiffs and other members of the class or securing comparable accommodations.

      b.     That this Court issue preliminary and permanent injunctions to enjoin Defendants from continuing to violate the Title II of the Americans with Disabilities Act and require Defendants to immediately establish a policy of providing accommodations in a timely manner and ceasing to remove such accommodations without warning, engaging in a dialogue with the Plaintiffs and other members of the class or securing comparable accommodations.

      c.     That this Court issue such other relief as may be just, equitable and appropriate, including compensatory damages for the actual and prospective financial losses as well as emotional distress suffered by the Plaintiffs because of the discriminatory actions of the Defendants and a award the Plaintiffs reasonable attorneys' fees, litigation expenses and costs.

On the Plaintiffs' Fifth Cause of Action:

      a.     That this Court declare that the actions and failures to act of Defendants, including its agencies, agents and employees, violated Title II of the Americans with Disabilities Act by utilizing criteria and methods of administration that discriminate against Plaintiffs and defeat or substantially impair the accomplishment of the objectives of higher education.

      b.     That this Court issue preliminary and permanent injunctions to enjoin Defendant from continuing to violate Title II of the ADA and requiring

Defendants to immediately establish a policy against utilizing criteria and methods of administration that discriminate against Plaintiffs and defeat or substantially impair the accomplishment of the objectives of higher education.

      c.     That this Court issue such other relief as may be just, equitable and appropriate, including compensatory damages for the actual and prospective financial losses as well as emotional distress suffered by the Plaintiffs because of the discriminatory actions of the Defendants and a award the Plaintiffs reasonable attorneys' fees, litigation expenses and costs.

On the Plaintiffs' Sixth Cause of Action:

      a.     That this Court declare that the actions and failures to act of Defendant USU, including its agencies, agents and employees, violated Title II of the ADA by utilizing policies, practices and procedures are facially discriminatory and tend to screen out students who are Deaf

      b.     That this Court issue preliminary and permanent injunctions to enjoin Defendant from continuing to violate Title II of the ADA, and to require Defendants to immediately modify all existing policies or procedures that are facially discriminatory and tend to screen out students who are Deaf or issue new policies to prevent such.

      c.     That this Court issue such other relief as may be just, equitable and appropriate, including compensatory damages for the actual and prospective financial losses as well as emotional distress suffered by the Plaintiffs because of the discriminatory actions of the Defendants and a award the Plaintiffs reasonable attorneys' fees, litigation expenses and costs.

## On the Plaintiffs' Seventh Cause of Action:

      a.     That this Court declare that the actions and failures to act of Defendants, including their agencies, agents and employees, violated Title II of the ADA's mandate to provide services in the most integrated setting.

      b.     That this Court issue preliminary and permanent injunctions to enjoin Defendant USU from continuing to violate Title II of the ADA and to require Defendants to immediately establish a written policy to provide services in the most integrated setting and a program at all levels to train employees and agents to follow this policy.

      c.     That this Court issue such other relief as may be just, equitable and appropriate, including compensatory damages for the actual and prospective financial losses as well as emotional distress suffered by the Plaintiffs because of the discriminatory actions of the Defendants and a award the Plaintiffs reasonable attorneys' fees, litigation expenses and costs.

## On the Plaintiffs' Eighth Cause of Action:

      a.     That this Court declare that the actions and failures to act of Defendants, including their agencies, agents and employees, violated Section 504 of the Rehabilitation Act of 1973.

      b.     That this Court issue preliminary and permanent injunctions to enjoin Defendant USU from continuing to violate Section 504 of the Rehabilitation Act of 1973 and require the Defendants to issue written policies and training to correct violations including: (1) denying the Plaintiffs' the benefits of the Defendants' programs or services and activities because they are Deaf, (2)

denying Plaintiffs equal access to educational opportunities solely by reason of their disabilities, (3) denying Plaintiffs reasonable and effective communication through the use of appropriate auxiliary aids and services, (4) failing or refusing to provide accommodations in a timely manner and removing accommodations without warning, engaging in a dialogue, or securing comparable accommodations; (5) utilizing criteria and methods of administration that discriminate against Plaintiffs and defeat or substantially impair the accomplishment of the objectives of higher education, (6) Utilizing policies, practices and procedures are facially discriminatory and tend to screen out students who are Deaf, and (7) failing or refusing to provide services in the most integrated setting.

     c.     That this Court issue such other relief as may be just, equitable and appropriate, including compensatory damages for the actual and prospective financial losses as well as emotional distress suffered by the Plaintiffs because of the discriminatory actions of the Defendants and a award the Plaintiffs reasonable attorneys' fees, litigation expenses and costs.

Dated: May _8_, 2006

_(signature)_

Dale H. Boam (10384)
LAW OFFICE OF DALE H BOAM P.C.
Tracy Scott Cowdell (09290)
Richard F. Armknecht III (A5910)
ARMKNECHT & COWDELL, P.C.
32 East Main Street
Sandy, Utah 84070
Telephone:    (801) 815-2547
Fax No.:     (801) 566-7965
e-mail:     dboam@comcast.net

# Exhibit 1



**UtahState**
**UNIVERSITY**

GLENN DAVIS
UNIVERSITY REGISTRAR
Taggart Student Center 246
Logan UT 84322-1600
Telephone: (435) 797-0792

August 31, 2005

Weber State University
Admissions Office
Ogden, UT 84404

Dear Admissions Officer:

Brent C. Patterson, birth date March 30, 1984, was admitted to Utah State University. However, USU lacks an appropriate number of interpreters to assist our hearing-impaired students, and Brent was granted a complete withdrawal for Fall Semester 2005.

If you have any questions about this matter, please feel free to contact me at 435-797-0977, or at my e-mail, Krystin.deschamps@usu.edu. Thank you.

Sincerely,

Krystin M. Deschamps

Krystin M. Deschamps
USU Matriculation Advisor

# CIVIL COVER SHEET

JS 44 (Rev. 11/04)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
GARY CHRISTENSEN, an individual, et al.

**(b)** County of Residence of First Listed Plaintiff   Cache County
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Armknecht & Cowdell PC, 32 East Main Street, Sandy, Utah 84070, 801-815-2547

## DEFENDANTS
UTAH STATE UNIVERSITY, et al.

**FILED U.S. DISTRICT COURT**

County of Residence of First Listed Defendant   Cache County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**DISTRICT OF UTAH**

Attorneys (If Known)
Robert Barclay

**BY: _____ DEPUTY CLERK**

2006 MAY -8 A 4:11

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☒ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 550 Civil Rights / ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. §§ 12101-12213 and §504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a)
Brief description of cause:
Utah State University and the Utah State Board of Regents Fail or Refuse to Provide Adequate Services to Deaf

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions:) JUDGE _____ DOCKET NUMBER _____

DATE May 3/2006    SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____

Judge J. Thomas Greene
DECK TYPE: Civil
DATE STAMP: 05/08/2006 @ 09:11:53
CASE NUMBER: 1:06CV00057 JTG